IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01748-PSF-MJW

DANIEL L. SCHAAL,

Plaintiff,

v.

JUDY FENDER, et al.,

Defendants.

---

## RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINT ORDER
## (Docket No. 82)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by District Judge Philip S. Figa on November 2, 2006 (Docket

No. 15).

At the time this action was commenced, the pro se plaintiff was a pretrial

detainee at the El Paso County Judicial Center ("EPCJC").  He brings this action

pursuant to 42 U.S.C. § 1983, and he alleges the following in his Amended Prisoner

Complaint (Docket No. 6).  He was assaulted by another inmate at EPCJC on March

12, 2006, and taken to the infirmary where he sat for 30 minutes before he was seen by

medical staff for injuries to his face, ankle, and foot.  Defendant Jensen examined

plaintiff, opined that he was probably just suffering from a sprain, wrapped his ankle

and foot with an ace wrap, and told plaintiff that he would be scheduled to have x-rays

2

done the following day.  Plaintiff told her his foot had twisted completely sideways, and he believed he needed to be taken to the hospital.  She responded that the following day plaintiff would be examined by the doctor, who would be the one to determine whether outside care was needed.  Since plaintiff had walked on his ankle to get to the infirmary, Jensen opined that the injuries were not so serious where plaintiff should be taken to outside care.  By the time he left the infirmary, plaintiff's foot was unbearable to stand on, and he felt something popping inside of his ankle.  Plaintiff was given crutches to use until he returned to his ward.  Jensen did not give plaintiff the proper slips needed to keep the crutches, so he was forced to walk on his ankle.

The following day, about 24 hours later, he was x-rayed and told that he would be notified within a day or two of the results.  Around two hours later, he was contacted that the x-rays showed that his leg was broken.  A person from the medical staff brought plaintiff an ice pack and told him that his leg was broken and would have a cast put on it in a few days, depending on the swelling.  The following day, he was put in a soft cast and was told that as soon as some of the swelling went down, he would be put in a cast, and that he could stand on his foot to shower and use the restroom.  At that time, plaintiff showed the doctor his upper abdomen and explained how it was getting bigger and hurting and that plaintiff was afraid it would get worse if he had to rely on crutches to walk.  The doctor gave plaintiff two ace wraps to wrap around himself.

Three weeks later, more x-rays were taken.  Two days later he was told that he had been misinformed about his injuries and that he actually sustained injuries to the "main bone in [his] leg as well." (Docket No. 6 at 9).  Plaintiff still did not receive the

promised cast.  The physician assistant told plaintiff to stay off his foot completely, and plaintiff was informed that he would be referred to an outside doctor to discuss surgery because his injuries were only getting worse.

Plaintiff was seen by an outside doctor, Dr. Shaw, on May 22, 2006, who could not read the plaintiff's x-rays, which had been dropped during transport.  The doctor thus had no records to reflect plaintiff's declining condition, and the doctor took more x-rays of plaintiff's ankle.  Plaintiff was removed from his wheelchair and placed in a boot.  Seven days later, plaintiff started to lose feeling in his ankle and foot and started feeling an intermittent burning sensation in his leg.

As of the date of the Amended Complaint, plaintiff had seen the doctor at EPCJC just the one time.  Although plaintiff was told he was going to be in the boot for a period of just six to eight weeks, he was in his second boot after the soles of the first became worn.  Plaintiff still had "mass swelling" over his ankle and foot.

On July 6, 2006, plaintiff was once again transported to see Dr. Shaw, who again had x-rays taken of plaintiff's ankle and foot.  Dr. Shaw informed plaintiff that plaintiff had an extremely bad case of arthritis in his ankle due to the injuries and that plaintiff had no choice but to have surgery in the future.

Plaintiff had also suffered a broken nose during the assault, which caused his vision to decrease.  Plaintiff has put in numerous "kites" concerning his inability to breathe as easily as well as about his eye sight.  Nevertheless, plaintiff's nose was examined only once, and he was informed that his nostril passages were swollen.  The physician assistant ("PA") prescribed an optional allergy medication, which caused

plaintiff to have nose bleeds.  During plaintiff's next visit to the medical department, he

brought this to the PA's attention, but his complaints were ignored, as was his vision

loss.

Pursuant to an Order issued by Senior Judge Zita L. Weinshienk (Docket No.

12; Schaal v. Correctional Healthcare Management, 2006 WL 3054015 (D. Colo. Oct.

26, 3006)), four defendants remain in this action, namely, Judy Fender; "Jensen,"

Medical Assistant; "Turk," Medical Assistant; and Ron Johnson, PA.  As a result of this

order, only the following four of five claims remain.[1]  First, plaintiff contends that the

delayed care of his ankle injuries has resulted in permanent damage.  Second, he

complains about being denied the opportunity to obtain outside care during the first few

months.  Third, he complains of "Medical assistant Turk, the total unprofessionalism,

and choice of ignoring the proper care I need."  (Docket No. 6 at 19).  He asserts that

when he was examined by defendant Turk, she claimed she did not see any swelling,

which was false, and plaintiff states that he "was asking to be seen by a Doctor to try

and understand why I was suffering from so much swelling as well as my problems I

was having breathing which was totally ignored."  (Docket No. 6 at 19).  Fourth, plaintiff

complains that he was given medication for his swollen nostril passages that only

caused him more health problems instead of helping him.  Plaintiff asserts that he

needed to be seen by a professional in the field of his injuries concerning his nose and

eyes, but instead he was ignored and given the wrong medication.  Plaintiff seeks

---

[1]The fifth claim for relief (Docket No. 6 at 21) against Dave Gilbert, the state court judge presiding over plaintiff's criminal cases, was dismissed by Judge Weinshienk for lack of personal participation.  (Docket No. 12).

5

monetary relief.

Now before the court is another motion by plaintiff for a temporary restraining

order ("TRO") (Docket No. 82).[2]  In this motion, plaintiff seeks a TRO against the four

remaining defendants, claiming they "continue to harm the care [he is] entitled to."

(Docket No. 82 at 2).  More specifically, he asserts:

> The daily medication is delivered to the ward twice a day.  The day
> (morning) meds, when given by Turk has been, denied and even allowed
> to discontinue Doctor order medication through her own desicion [sic],
> while I still needed these meds.  Now, again this Turk is bringing the
> meds to the ward in the a.m. and again I am being denied my meds.  At
> this time I the plaintiff requests these restraint orders while case is
> pending as to avoid any further negligence of lack of medication.

(Docket No. 82 at 2).

Defendants have advised the court that plaintiff is no longer a pretrial detainee,

that on October 22, 2007, in El Paso County District Court he was sentenced to prison,

that on November 9, 2007, he was transferred from the EPCJC to the custody of the

Colorado Department of Corrections, and that he was transported to the Denver

Reception and Diagnostic Center where he will be held before transfer to a different

prison facility.  (Docket Nos. 85 and 86).  The court has checked the website of the

Colorado Department of Corrections and has ascertained through its Inmate Locator

that the plaintiff is currently housed in the Denver Reception and Diagnostic Center.

Therefore, since the plaintiff is no longer housed at the EPCJC and is no longer

receiving medical care from any of the defendants, this court agrees with the

---

[2]This is plaintiff's fifth request for injunctive relief.  In an Order dated August 27,
2007 (Docket No. 75), Judge Figa denied the four previous requests for such relief.

defendants that the plaintiff's motion is moot and should be denied.  See Smith v. Plati, 258 F.3d 1167, 1179 (10th Cir. 2001) ("An issue becomes moot when it becomes impossible for the court to grant 'any effectual relief whatsoever' on that issue to a prevailing party.").

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED that plaintiff's Motion for Temporary Restraint Order (Docket No. 82) be DENIED as moot.  It is further

ORDERED that the Clerk of Court shall send a copy of this Recommendation to Daniel L. Schaal, DOC Number 83976, Denver Reception and Diagnostic Center, 10900 Smith Road, Denver, CO 80239.  It is further

ORDERED that plaintiff shall forthwith comply with D.C.COLO.LCivR 10.1(M) by filing a notice of his new address.

NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411,

**1412-13 (10th Cir. 1996).**

BY THE COURT:

Date: November 15, 2007                    s/Michael J. Watanabe
      Denver, Colorado                     MICHAEL J. WATANABE
                                           United States Magistrate Judge