IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01748-MSK-MJW

DANIEL L. SCHAAL,

Plaintiff,

v.

JUDY FENDER, et al.,

Defendants.

---

## RECOMMENDATION ON
## DEFENDANTS' RULE 37 MOTION FOR THE SANCTION OF DISMISSAL
## (DOCKET NO. 157), AS SUPPLEMENTED (DOCKET NO. 162)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by District Judge Philip S. Figa on November 2, 2006 (Docket

No. 15).  Upon the passing of Judge Figa and pursuant to General Order 2008-1, the

case was reassigned to Judge Marcia S. Krieger effective January 8, 2008.  (Docket

No. 91).

**Background**

At the time this action was commenced, the pro se plaintiff was a pretrial

detainee at the El Paso County Judicial Center ("EPCJC").  He brings this action

pursuant to 42 U.S.C. § 1983, and he alleges the following in his Amended Prisoner

Complaint (Docket No. 6).  He was assaulted by another inmate at EPCJC on

March 12, 2006, and taken to the infirmary where he sat for 30 minutes before he was

2

seen by medical staff for injuries to his face, ankle, and foot.  Defendant Jensen examined plaintiff, opined that he was probably just suffering from a sprain, wrapped his ankle and foot with an ace wrap, and told plaintiff that he would be scheduled to have x-rays done the following day.  Plaintiff told her his foot had twisted completely sideways, and he believed he needed to be taken to the hospital.  She responded that the following day plaintiff would be examined by the doctor, who would be the one to determine whether outside care was needed.  Since plaintiff had walked on his ankle to get to the infirmary, Jensen opined that the injuries were not so serious where plaintiff should be taken to outside care.  By the time he left the infirmary, plaintiff's foot was unbearable to stand on, and he felt something popping inside of his ankle.  Plaintiff was given crutches to use until he returned to his ward.  Jensen did not give plaintiff the proper slips needed to keep the crutches, so he was forced to walk on his ankle.

The following day, about 24 hours later, plaintiff had x-rays taken and was told he would be notified within a day or two of the results.  Around two hours later, he was told the x-rays showed a broken leg.  A medical staff member brought plaintiff an ice pack and told him that his leg was broken and would have a cast put on it in a few days, depending on the swelling.  The following day, he was put in a soft cast and was told that as soon as some of the swelling went down, he would be put in a cast and that he could stand on his foot to shower and use the restroom.  At that time, plaintiff showed the doctor his upper abdomen and explained how it was getting bigger and hurting and that plaintiff was afraid it would get worse if he had to rely on crutches to walk.  The doctor gave plaintiff two ace wraps to wrap around himself.

Three weeks later, more x-rays were taken.  Two days later, plaintiff was told he

had been misinformed about his injuries and he actually sustained injuries to the "main bone in [his] leg as well." (Docket No. 6 at 9). Plaintiff still did not receive the promised cast. The physician assistant told plaintiff to stay off his foot completely, and plaintiff was informed that he would be referred to an outside doctor to discuss surgery because his injuries were only getting worse.

Plaintiff was seen by an outside doctor, Dr. Shaw, on May 22, 2006, who could not read the plaintiff's x-rays, which had been dropped during transport. The doctor thus had no records to reflect plaintiff's declining condition, and the doctor took more x-rays of plaintiff's ankle. Plaintiff was removed from his wheelchair and placed in a boot. Seven days later, plaintiff started to lose feeling in his ankle and foot and started feeling an intermittent burning sensation in his leg.

As of the date of the Amended Complaint, plaintiff had seen the doctor at EPCJC just the one time. Although plaintiff was told he was going to be in the boot for a period of just six to eight weeks, he was in his second boot after the soles of the first became worn. Plaintiff still had "mass swelling" over his ankle and foot.

On July 6, 2006, plaintiff was once again transported to see Dr. Shaw, who again had x-rays taken of plaintiff's ankle and foot. Dr. Shaw informed plaintiff that plaintiff had an extremely bad case of arthritis in his ankle due to the injuries and that plaintiff had no choice but to have surgery in the future.

Plaintiff had also suffered a broken nose during the assault, which caused his vision to decrease. Plaintiff has put in numerous "kites" concerning his inability to breathe as easily as well as about his eye sight. Nevertheless, plaintiff's nose was examined only once, and he was informed that his nostril passages were swollen. The

physician assistant ("PA") prescribed an optional allergy medication, which caused plaintiff to have nose bleeds.  During plaintiff's next visit to the medical department, he brought this to the PA's attention, but his complaints were ignored, as was his vision loss.

Pursuant to an Order issued by Senior Judge Zita L. Weinshienk (Docket No. 12; Schaal v. Correctional Healthcare Management, 2006 WL 3054015 (D. Colo. Oct. 26, 3006)), four defendants remain in this action, namely, Judy Fender; "Jensen," Medical Assistant; "Turk," Medical Assistant; and Ron Johnson, PA.  As a result of that Order, only the following four of five claims remain.[1]  First, plaintiff contends that the delayed care of his ankle injuries has resulted in permanent damage.  Second, he complains about being denied the opportunity to obtain outside care during the first few months.  Third, he complains of "Medical assistant Turk, the total unprofessionalism, and choice of ignoring the proper care I need." (Docket No. 6 at 19).  He asserts that when he was examined by defendant Turk, she claimed she did not see any swelling, which was false, and plaintiff states that he "was asking to be seen by a Doctor to try and understand why I was suffering from so much swelling as well as my problems I was having breathing which was totally ignored." (Docket No. 6 at 19).  Fourth, plaintiff complains that he was given medication for his swollen nostril passages that only caused him more health problems instead of helping him.  Plaintiff asserts that he needed to be seen by a professional in the field of his injuries concerning his nose and

---

[1]The fifth claim for relief (Docket No. 6 at 21) against Dave Gilbert, the state court judge presiding over plaintiff's criminal cases, was dismissed by Judge Weinshienk for lack of personal participation.  (Docket No. 12).

eyes, but instead he was ignored and given the wrong medication.  Plaintiff seeks

monetary relief.

A Rule 16 Scheduling Conference was conducted by this court on October 22,

2008.  During that conference, and in the Courtroom Minutes/Minute Order (Docket No.

115) and the Scheduling Order (Docket No. 117) filed after that proceeding, this court

directed plaintiff to provide to defendants his Fed. R. Civ. P. 26(a)(1) disclosures on or

before October 31, 2008.  (Docket No. 115 at 1, Docket No. 117 at 7).  In addition, the

parties were directed to serve requests for production of documents and requests for

admission on or before February 25, 2009.  (Docket No. 115 at 1, Docket No. 117 at

10).  Also, "[a]ll depositions, fact and expert witnesses" were to be completed no later

than March 31, 2009.  (Docket No. 115 at 2).

Furthermore, the Scheduling Order contains the following provision:

e.      (1) Plaintiff agrees to provide Defendants with a list of all health
        care providers and facilities he has received care, treatment, or
        consultation from since March 2001 to the present, and to provide
        fully-executed HIPAA-compliant release authorizations to defense
        counsel so that defense counsel may obtain records from Plaintiff's
        health care providers.  (2) Plaintiff agrees to provide Defendants
        with a list of his employers from January 1996 to the present, and
        to provide fully-executed release authorizations to defense counsel
        so that they can obtain Plaintiff's employment records.  (3) Plaintiff
        has been informed that defense counsel will serve on him a written
        request for production of documents seeking a release
        authorization that will allow defense counsel to obtain any and all
        records concerning Plaintiff that are maintained by the El Paso
        County Sheriff's Department, including all of Plaintiff records
        concerning his detention and incarceration at the El Paso County
        Criminal Justice Center. . . . .

(Docket No. 117 at 7).  The Scheduling Order further set a discovery cut-off of

March 31, 2009, and a dispositive motion deadline of April 30, 2009.  (Docket No. 117

at 8-9).

The Scheduling Order also indicates that in advance of the Scheduling

Conference, defense counsel set up and conducted a telephone prescheduling

conference with plaintiff following which defense counsel revised the proposed

Scheduling Order and mailed it to plaintiff with a detailed cover letter, asking plaintiff to

submit additions within seven days in order to meet the court's deadline.  Two weeks

after the prescheduling conference, however, plaintiff had failed to respond despite

indicating during the prescheduling conference that he wanted to submit additional

written information.

On January 15, 2009, defendants moved to compel plaintiff's discovery

responses and disclosures.  (Docket No. 147).  Plaintiff did not file a response to the

motion.  Defendants filed a "reply."  (Docket No. 150).  On February 23, 2009, this court

issued a Minute Order granting the defendants' motion.  The Minute Order provided:

> It is hereby ORDERED that Defendants' Motion to Compel
> Plaintiff's Discovery Responses and Disclosures (docket no. 147) is
> GRANTED for all of those reasons as outlined in the subject motion
> (docket no. 147) which this court incorporates by reference and for the
> additional reason that the Pro Se Incarcerated Plaintiff has failed to file
> any timely response to the subject motion (docket no. 147), and thus the
> Pro Se Incarcerated Plaintiff has confessed the subject motion (docket no.
> 147).
>
> FURTHER, it is ORDERED that the Pro Se Incarcerated Plaintiff
> shall forthwith fully execute the release authorizations in the forms
> attached to the subject motion (Exhibit C-1) and provide such fully
> executed release authorizations to the Defendants **on or before March
> 12, 2009.**
>
> FURTHER, it is ORDERED that the Pro Se Incarcerated Plaintiff
> shall provide to Defendants non-evasive answers to Defendants' First Set
> of Interrogatories and Requests for Production of Documents and the Pro

Se Incarcerated Plaintiff's initial Rule 26(a)(1) disclosures **on or before March 12, 2009.**

FURTHER, it is ORDERED that no sanctions will be imposed against the Pro Se Incarcerated Plaintiff at this time.  However, the Pro Se Incarcerated Plaintiff is placed on notice **that any further discovery violations or any further failures to comply with court orders may result in sanctions, including but not limited to, a recommendation for dismissal of this action**.

(Docket No. 153) (emphasis in original).

On February 24, 2009, plaintiff filed a "Notice to the Clerks of the United States Court" (Docket No. 154), which is not a model of clarity, but in which he stated he was sending interrogatories, he did not have any funds to send them to the defendants, and he wanted to make sure Judge Krieger received them.  Plaintiff further stated that he

received Friday notice of Interrogatories not delivered.  With this letter the Plaintiff delivers through Court the papers sent.

Plaintiff also has falsely made motions alleged <u>granted</u> from courts demanding all paperwork to be sent to Defendants within 5 days "allegedly granted."

Plaintiff asks the Court for a Hearing on all issues at Hand

In Person Please?

(Docket No. 154 at 2).  Attached thereto were the Defendants' First Set of Interrogatories and Requests for Production of Documents to Plaintiff Schaal on which plaintiff hand-wrote very brief answers .  (Docket No. 154).  An appendix to that attachment states:

the Plaintiff has had his relevant and material documents, files, and records-which are indisputably necessary for the Plaintiff to access and utitize [sic] in order to provide the requested factual information as Plaintiff answer to this interrogatory lost and misplaced by law enforcement and/or penal personnel during frequent transfer between penal institutions for the

purpose impeding, hindering, and/or denying Plaintiffs [sic] access to this
U.S. District Court and to prevent this instant Plaintiff from obtaining a jury
trial concerning the intentional and malicious violation(s) of the known,
established, and recognized, U.S. Constitution Right(s) as set forth in
Plaintiff's #1983 Civil Rights complaint.

(Docket No. 154 at 5).

**Defendants' Motions**

Now before the court for a report and recommendation is the Defendants' Rule

37 Motion for the Sanction of Dismissal (Docket No. 157), as supplemented (Docket No.

162).  In addition, defendants move to take the plaintiff's deposition out of time if the

case is not entirely dismissed.  (Docket No. 16).  Plaintiff filed a one-page "Answer in

Response on Defendants [sic] Two Motions for Dismissal" in which he merely stated:

"I, Daniel Schaal, Plaintiff, agree to extensions if any to be given from the Courts.

Plaintiff otherwise answers, to request a hearing on issues involved for any Dismissal to

be entertained, Please Thank you!"  (Docket No. 165).  Defendants subsequently filed a

Reply.  (Docket No. 166).  In addition, over six weeks ago, defendants filed a motion for

summary judgment (Docket No. 170) and supplement thereto (Docket No. 172), which

is pending before Judge Krieger.  Plaintiff has not filed a response to the summary

judgment motion.  (See Docket No. 174, status report by defendants).

The court has carefully reviewed the motions, the supplement, the response, and

the reply and has considered the court's file and applicable case law, statutes, and

Federal Rules of Civil Procedure.  The court now being fully informed makes the

following findings, conclusions, and recommendation.

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides in pertinent

part:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>> (iii) striking pleadings in whole or in part;
>> (iv) staying further proceedings until the order is obeyed;
>> (v) **dismissing the action or proceeding in whole or in part**;
>> (vi) rendering a default judgment against the disobedient party; or
>> (vii) **treating as contempt of court the failure to obey any order** except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(emphasis added).  In addition, Rule 41(b) of the Federal

Rules of Civil Procedure provides in pertinent part:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule–except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19–operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).  Furthermore, Rule 16(f) provides in pertinent part that "[o]n

motion or on its own, the court may issue any just orders, including those authorized by

Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: . . . fails to obey a scheduling or other

pretrial order." Fed. R. Civ. P. 16(f).  Here, pursuant to Rule 37, defendants seek the

entry of an order dismissing with prejudice all of the plaintiff's claims based upon

plaintiff's contempt of the court's orders and plaintiff's continuing discovery violations.

The court has reviewed the plaintiff's discovery responses and the motion

papers and finds as follows.  Plaintiff has yet to provide to defendants with any of his

Fed. R. Civ. P. 26(a)(1) disclosures, notwithstanding this court's Scheduling Order

requiring them to be provided on or before October 31, 2008 (Docket No. 115 at 1,

Docket No. 117 at 7), and this court's subsequent order on defendants' motion to

compel directing that the disclosures be provided on or before March 12, 2009.  (Docket

No. 153).  Plaintiff has also failed to comply with the court's additional directives in the

latter order (Docket No. 153) that on or before March 12, 2009, he fully execute the

release authorizations in the forms attached to the subject motion, provide such fully-

executed release authorizations to the Defendants, and provide to Defendants non-

evasive answers to Defendants' First Set of Interrogatories and Requests for Production

of Documents.

Instead, plaintiff sent defense counsel only eight of the fourteen release

authorizations that were attached to the motion to compel.  He failed to provide the state

tax return release and all four of the blank release authorization to allow defendants to

obtain plaintiff's medical, pharmacy, employment, and jail/prison records.  (See Defs.'

Ex. A to Docket No. 157).  Defendants assert that without these releases, they cannot

obtain material records such as records from plaintiff's two employers identified in his

partial discovery responses or jail/prison records from the Department of Corrections

where plaintiff is currently incarcerated.  As defendants further note, of the release

authorizations plaintiff did provide, rather than fully executing them in the forms attached

as directed by this court's order (Docket No. 153), plaintiff manipulated seven of them

by writing in or striking and writing in a short expiration date, striking out other language,

writing in comments such as "forced to release info," failing to have the El Paso County

jail records release authorization notarized, and failing to properly sign or date the

11

federal tax return form but instead printing a shortened form of his name.

With regard to the Defendants' First Set of Interrogatories and Requests for Production of Documents, plaintiff did file the "Notice to the Clerks of the United States Courts" referenced above (Docket No. 154).  The court agrees with defendants that the plaintiff's brief responses to those Interrogatories are incomplete and inadequate despite this court's order to provide to the defendants "non-evasive answers" to the discovery.  (Docket No. 153).  The court finds that each answer is incomplete and/or evasive.  The court agrees with defendants that plaintiff's answers do not contain simply a few oversights but instead demonstrate plaintiff's efforts to evade complete and accurate answers.

"[D]ismissal represents an extreme sanction appropriate only in cases of willful misconduct."  Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992).  "Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: '(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant,' . . . (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, . . . . and (5) the efficacy of lesser sanctions."  Id. at 921.  "These factors do not create a rigid test; rather they represent criteria for the district court to consider prior to imposing dismissal as a sanction."  Id.  Since the plaintiff is appearing pro se, this court has "assess[ed] whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right to access to the courts because of a technical violation."  Id. at 920 n.3.  Defendants here assert that consideration of

these <u>Ehrenhaus</u> factors weighs heavily in favor of dismissal with prejudice.  This court agrees.

Regarding the first factor, the degree of prejudice to the defendants, defendants note that their motion was filed just 13 days before the discovery deadline.  It is now well past that deadline.  Defendants assert that plaintiff's failure to provide his disclosures and complete responses has prevented them from, among other things, discovery and obtaining material records and information about previous and subsequent treatment for plaintiff's complained of medical conditions including his right ankle and his hernia, obtaining critical grievance and appeal records at the El Paso County Criminal Justice Center that could support their affirmative defense of failure to exhaust administrative remedies, and discovering information related to plaintiff's income and employment history.  The court agrees with defendants' contention that plaintiff has obstructed their "attempt to discovery critical and necessary information related to the claims, damages, and defenses - information the Defendants have a right to and a need for in defense of the case."  (Docket No. 157 at 7).  Furthermore, defendants have not had an opportunity to depose plaintiff adequately as a result of not having needed discovery prior to such deposition.

The court further finds with regard to the second <u>Ehrenhaus</u> factor that the plaintiff has significantly interfered with the judicial process.   Plaintiff was well aware of the discovery and disclosure deadlines set in this case having participated in the Scheduling Conference and received copies of this court's orders.  Nevertheless, plaintiff has interfered with the judicial process by showing

contempt by willfully failing to comply with two of this court's orders, delaying

preventing defendants from conducting the discovery, interfering with the discovery

schedule, and wasting judicial resources.

The court further finds plaintiff culpable for the delays and the violations of

this court's order.  Plaintiff has been given repeated notice of the requirement that

he serve his disclosures and his deadline for written discovery, yet he has merely

provided defendants with incomplete, evasive answers and did not even sign all of

the releases properly as directed by this court.  Plaintiff has not provided any good

faith justification for his failure to participate fully in discovery other than making a

conclusory allegation in his Appendix to the Notice sent to the court that his

documents were lost or misplaced during his transfers to different facilities.

(Docket No. 154 at 5).  Such statement does not explain why he could not provide

defendants with even basic information such as his social security number, his

residences, and details about his past employment, dates he attended school, his past

convictions, etc.

With regard to the fourth <u>Ehrenhaus</u> consideration, whether the court

warned the party in advance that dismissal of the action would be a likely sanction

for noncompliance, this court specifically advised plaintiff in its in bold lettering "**that**

**any further discovery violations or any further failures to comply with court**

**orders may result in sanctions, including but not limited to, a recommendation for**

**dismissal of this action**."  (Docket No. 153).  In addition, defendants assert that their

counsel conferred with the plaintiff about plaintiff's discovery violations and notified him

14

that defendants would seek dismissal of his claims for failure to comply.  (Docket No. 157, citing Docket Nos. 147 and 150).

Finally, concerning the efficacy of lesser sanctions, this court finds Plaintiff's many failures to obey the orders of this court are simply unacceptable and should not be tolerated.  Plaintiff is not making much effort to prosecute this action.  He did not send defense counsel information for inclusion in the proposed Scheduling Order, he has not actively engaged in discovery, and most recently he has not even filed a response to the defendants' motion for summary judgment.  This court finds that "[t]here is no lesser sanction available under the circumstances, as it would be pointless to impose a financial sanction on a plaintiff who has failed to comply with previous court orders . . . .  Dismissal is appropriate to enforce the court's Order . . . ." Martin v. Sherrod, 2007 WL 1832036, *11 (D. Colo. June 25, 2007).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that  Defendants' Rule 37 Motion for the Sanction of Dismissal (Docket No. 157) be granted.  It is further

**RECOMMENDED** that if Defendants' Rule 37 Motion for the Sanction of Dismissal (Docket No. 157) or Defendants' Motion for Summary Judgment (Docket No. 170) (which is pending before Judge Krieger) is not granted, then the Defendants' Motion for Leave to Take Plaintiff's Deposition Out of Time if the Case is Not Entirely Dismissed (Docket No. 161) be granted.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file**

15

written, specific objections to the above recommendation with the District Judge

assigned to the case.  The District Judge need not consider frivolous, conclusive,

or general objections.  A party's failure to file and serve such written, specific

objections waives *de novo* review of the recommendation by the District Judge,

Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives

appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of

Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411,

1412-13 (10th Cir. 1996).

BY THE COURT:


Date:  June 22, 2009                          s/Michael J. Watanabe
       Denver, Colorado                     MICHAEL J. WATANABE
                                            United States Magistrate Judge